# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:10cv18

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| 400 ROPER STREET, MORGANTON ) | |
| NORTH CAROLINA, being real ) | |
| property as described in a deed at Book ) | |
| 431, Page 468, of the Registry of Burke ) | |
| County, North Carolina, together with ) | |
| the residences, and all appurtenances, ) | |
| improvements, and attachments thereon, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon claimants' Motion to Dismiss. Having carefully considered claimants' Motion to Dismiss(#10) and reviewed the pleadings, including the government's Response,[1](#11) the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

**I.  Background**

Claimants contend that when the government commenced this action on

---

[1]  Neither a reply nor a notice of no reply was filed by claimants.  See L.Cv.R. 7.1.

January 15, 2010, the statute of limitations for seeking such civil forfeiture *in rem* had run because the government alleged in its Complaint that

> [s]ome of the acts done by John Wilson Patton to commit the offense of conspiracy to possess with intent to distribute cocaine base occurred at the defendant property from January 2002 until April 3, 2007.

Compl., at ¶ 16. Because the government alleged the existence of a conspiracy dating back to 2001 and 2002, and had "knowledge of criminal convictions and indictments for drug activity occurring on or around the property" as early as 2003 and 2004, this action is barred by the five year statute of limitations under 19, United States Code, Section 1621. Motion, at pp. 3-4.

## II.  Rule 12(B)(1): Applicable Standard

Claimants have moved "pursuant to Rule 12(b)" as well as Rule G(5)(a)(ii), Fed.R.Civ.P.Supp.R., to dismiss this action. Motion, at p.1. The court deems such motion to have been made under Rule 12(b)(1), Fed.R.Civ.P., inasmuch as this court would lack jurisdiction over the subject matter of this action if the action were time barred.

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter

jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a

lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

### III. Discussion

To begin a discussion of the statute of limitations applicable to civil forfeiture cases, the undersigned will first review the applicable statute. Title 19, United States Code, Section 1621 provides the statute of limitations for civil forfeiture cases:

> **§ 1621. Limitation of actions**
> No suit or action to recover any duty under section 1592 (d), 1593a(d) of this title, or any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later; except that—
>     (1) in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action (including a suit or action for restoration of lawful duties under subsection (d) of such sections) may be instituted unless commenced within 5 years after the date of the alleged violation or, if such violation arises out of fraud, within 5 years after the date of discovery of fraud, and
>     (2) the time of the absence from the United States of the

> person subject to the penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within the 5-year period of limitation.

19 U.S.C. § 1621. In its Motion to Dismiss, claimants appear to focus on the government's discovery of earlier unlawful acts occurring at defendant property, rather than last acts of criminal conduct. The question raised, therefore, is whether Section 1621's statute of limitations begins to run from the first unlawful acts or from the last unlawful acts committed at such property?

Determining when the statute of limitations begins to run is, conceptually, difficult because a conspiracy is a continuing offense. For Section 371 conspiracies -- which require an overt act in furtherance of the conspiracy -- the statute of limitations begins to run the day the last overt act was committed in furtherance of that conspiracy. Fiswick v. United States, 329 U.S. 211 (1946). Similarly, the Court of Appeals for the Fourth Circuit has held that "the statute of limitations period begins to run, not from the date of the legally cognizable harm, but from the date of the last overt act." United States v. A-A-A Electric Co., Inc., 788 F.2d 242, 245 (4th Cir. 1986). For example, one might think that a conspiracy to rob a bank was complete when the bank was actually robbed; however, if the conspirators several days later dumped the getaway car in a lake, then went their separate ways, the date of the abandonment of the car would be the date from which the statute of limitations would

run.

For conspiracy statutes which do not require proof of an overt act -- such as a RICO Conspiracy under 18 U.S.C. § 1961, a money laundering conspiracy under 18 U.S.C. § 1956(h), or a drug conspiracy under 21 U.S.C. § 846 or § 943 -- the government must be able to show that the conspiracy continued into the limitations period. United States v. Wilkins, 2009 WL 4458531 n. 10 (4th Cir. Dec. 4, 2009).[2] The United States Supreme Court has long held that a conspiracy "continues up until the time of success or abandonment." United States v. Kissel, 218 U.S. 601, 608 (1910); United States v. Campbell, 2009 WL 3326412 (4th Cir. Oct. 16, 2009).[3]

For Rule 12(b)(1) purposes, the court has looked to the allegations of the Verified Complaint for Forfeiture *In Rem* (hereinafter "Complaint"), where the court has found the following allegations concerning claimant John Wilson Patton's alleged use of the home to be within the limitations period for unlawful and forfeitable purposes:

> 15. On July 13, 2007, a jury in the United States District Court for the Western District of North Carolina convicted John Wilson Patton in case 1:07cr33 of the offenses of conspiracy to possess with

---

[2] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[3] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

> intent to distribute cocaine base and possessing a firearm having previously been convicted of a felony.
>
> 16. **Some of the acts done by John Wilson Patton to commit the offense of conspiracy** to possess with intent to distribute cocaine base occurred at the defendant property from January 2002 **until April 3, 2007**.
>
> * * *
>
> 26. **On December 14, 2006**, a confidential informant for the Office of the Sheriff, Burke County, North Carolina, **purchased cocaine base**, a controlled substance under North Carolina and federal law, from Curtis Jerome Lytle **at the residence at the defendant property**.
> 27. John Wilson Patton was present during that purchase on December 14, 2006.

Complaint, at ¶¶ 15, 16, 26, & 27 (emphasis added). In addition to allegations concerning claimant John Wilson Patton, the government has also made allegations concerning use of the home by his brother, Harold Eugene Patton, for similar unlawful and forfeitable purposes which are <u>within</u> the relevant limitations period, as follows:

> 17. **On July 12, 2007**, Harold Eugene Patton pleaded guilty in the United States District Court for the Western District of North Carolina in case 1:07cr33 to the offense of conspiracy to possess with intent to distribute cocaine base.
> 18. **Some of the acts** done by Harold Eugene Patton to commit the **offense of conspiracy** to possess with intent to distribute cocaine base occurred at the defendant property from January 2002 **until April 3, 2007.**
>
> * * *
>
> 28. **On October 2, 2006**, a confidential informant for the Office of the Sheriff, Burke County, North Carolina, **purchased cocaine base**, a controlled substance under North Carolina and federal law, from Harold Eugene Patton **at the residence at the defendant property**.

7

* * *

    33.    Harold Eugene Patton distributed cocaine base at the defendant property in 2004.

Id., at ¶¶ 17, 18, 28, & 33 (emphasis added). Simply adding five years (the later of the two periods available under Section 1621) to the dates of such alleged occurrences makes it clear that when the government filed this civil action on January 15, 2010, it filed the complaint within the five year limitations period.

Perhaps the best example of the renewing impact of later criminal conduct can be found in the case cited by the government in its response, United States v. 5443 Suffield Terrace, Skokie, Illinois, 209 F.Supp.2d 919, 922 (N.D.Ill. 2002). In that case, the statute of limitations did not begin to run on the government the first time Mr. Connors used the home to facilitate cigar smuggling; rather, it began anew the *last time* he used to the home to facilitate the smuggling of cigars, representing, as the district court found, "the government's initial discovery of a fresh 'alleged offense' . . . ." Id., at 922. In this case, the government is neither bound by a criminal defendant's first use of real property to facilitate a predicate offense nor by the date it first knew of such offense as such could result in absurd results, especially where the criminal investigation and conduct may go on for years beyond the government's discovery that criminal activity is afoot. Instead, it is the government's knowledge of the last use of the real property in furtherance of a predicate act that sets the clock in

motion.

In this case, the Complaint sufficiently alleges the occurrence of predicate acts and the use of such property in the facilitation of such acts such that the January 15, 2010, filing of this action is not time barred. The undersigned will, therefore, respectfully recommend that claimants' Motion to Dismiss be denied.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that claimants' Motion to Dismiss (#10) be **DENIED.**

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S.

140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: May 11, 2010

Dennis L. Howell
United States Magistrate Judge